```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
    EDWARD C. FUNCHES,                                :
                                                      :
                                         Plaintiff,   :    14 Civ. 7382 (KPF)
                                                      :
                         v.                           :    OPINION AND ORDER
                                                      :
    MARY T. BARRA, et al.,                            :
                                                      :
                                       Defendants.    :
                                                      :
------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 17, 2016

KATHERINE POLK FAILLA, District Judge:

On September 10, 2014, Plaintiff Edward C. Funches initiated this action against Defendants General Motors, LLC[1]; Mary T. Barra (the Chief Executive Officer ("CEO") of General Motors, LLC); Robert E. Ferguson[2] (an employee of General Motors, LLC); Pepe Auto Group, also known as Pepe Cadillac; Sue Silverman (the Chief Financial Officer ("CFO") of Pepe Auto Group); Mercedes-Benz USA, LLC; and Stephen Cannon[3] (the CEO of Mercedes-Benz, USA, LLC). Plaintiff's Amended Complaint alleges that Defendants violated his rights under the Americans with Disabilities Act (the "ADA" or "Act"), 42 U.S.C. § 12181 *et seq.*, engaged in deceptive trade practices and false advertising, breached an express warranty, breached a contract, and engaged in unjust enrichment.  On

---

[1]   General Motors, LLC is incorrectly named as Global Cadillac Company in the Amended Complaint.  (*See* GM Br. 1 n.1).

[2]   Robert E. Ferguson is incorrectly named as Robert E. Furguson in the Amended Complaint.  (*Compare* Am. Compl. 1, *with* GM Br. 1).

[3]   Stephen Cannon is incorrectly named as "Steve Cannon" in the Amended Complaint. (*Compare* Am. Compl. 1, *with* Mercedes Br. 1).

September 11, 2015, the defendants in this case filed a total of three dispositive motions: Defendants General Motors, LLC, Mary T. Barra, and Robert E. Ferguson (collectively, the "GM Defendants") filed a motion to dismiss the claims against them pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). Defendants Stephen Cannon and Mercedes-Benz USA, LLC (collectively, the "Mercedes Defendants") filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Finally, Defendants Pepe Auto Group and Sue Silverman (collectively, the "Pepe Defendants") filed a motion for judgment on the pleadings. For the reasons set forth in the remainder of this Opinion, the Court will grant the GM Defendants' Motions and the Mercedes Defendants' motions, and it will grant the Pepe Defendants' motion in part.

## BACKGROUND[4]

### A.  Factual Background

On August 9, 2012, Plaintiff purchased a used Mercedes-Benz automobile (the "Mercedes") from a Mercedes-Benz dealership located at 770 Eleventh Avenue in New York City. (Am. Compl. 4). A few weeks later, on September 14, 2012, Plaintiff purchased a used Cadillac automobile (the

---

[4] The facts in this Opinion are drawn from the Amended Complaint ("Am. Compl.," Dkt. #24), and the papers submitted in connection with the Defendants' motions, including the declaration of John Egan ("Egan Decl., Dkt. #46).

For the sake of clarity, the Court will refer to the GM Defendants' opening brief as "GM Br." (Dkt. #47), the Mercedes' Defendants' opening brief as "Mercedes Br." (Dkt. #53), and the Pepe Defendants' opening brief as "Pepe Br." (Dkt #57). The Court will refer to Plaintiff's responses to these briefs as "GM Resp." (Dkt. #58), "Mercedes Resp." (Dkt. #59), and "Pepe Resp." (Dkt. #60). Finally, the Court will refer to Defendants' reply briefs as "GM Reply" (Dkt. #61), "Mercedes Reply (Dkt. #63), and "Pepe Reply" (Dkt. #62).

"Cadillac") from Pepe Cadillac ("Pepe"), located at 15 Walter Street in White Plains, New York. (*Id.*). Because Plaintiff is paraplegic, he installed hand controls in both vehicles after he purchased them. (*Id.* at 2, 4).

### 1.     Plaintiff's Allegations Concerning the Mercedes

On July 22, 2014, Plaintiff took his Mercedes back to the Mercedes-Benz dealership so that the sunroof could be repaired. (Am. Compl. 5). He asked the dealership if he could borrow a car until the repairs were completed, but the dealership did not have any rental cars with hand controls available. (*Id.*). As a result, the dealership offered to (and did in fact) reimburse Plaintiff for the cost of renting a hand-controlled car from another company. (*Id.* at 7).

### 2.     Plaintiff's Allegations Concerning the Cadillac

#### a.     Courtesy Rental Cars

Between December 6, 2012, and October 20, 2014, Pepe serviced Plaintiff's Cadillac six times. (Am. Compl. 4-6). Each time he left his car to be serviced, Plaintiff requested a "courtesy loaner car," but Pepe was unable to provide a loaner car with hand controls. On two of these occasions, Plaintiff also asked Pepe's staff to transfer the hand controls on his car to a rental car, but the staff declined to make the transfer because they lacked the requisite certification. (*Id.*). During Plaintiff's October 2014 visit to Pepe's, an employee allegedly told Plaintiff that he could only have a courtesy rental car with foot controls, and said that Plaintiff's "common law [w]ife, Kimberly Walcott, [would] have to drive him around since she's on the policy." (*Id.* at 6). Ms. Walcott

picked up a foot-controlled car on October 31, 2014, and returned it on November 3, 2014. (*Id.*).

### b. The Extended Warranty

Plaintiff's Cadillac was covered by two warranties. (Am. Compl. 2). The first was a factory warranty, and the second was an "extended" warranty provided by Pepe. (*See id.*; Egan Decl., Ex. C). Pepe's warranty covered the Cadillac until January 1, 2014, or until the car had traveled 75,000 miles. (*See* Egan Decl., Ex. C).

### B. Procedural Background

Plaintiff filed a Complaint on September 10, 2014, alleging that Defendants had violated his rights under the ADA. (*See* Dkt. #1). More specifically, he alleged that the GM Defendants and the Mercedes Defendants had violated his rights because they did not manufacture some portion of their cars with hand controls. (*Id.*). In addition, he claimed that Pepe had violated his rights when it did not provide a courtesy, hand-controlled loaner car while his Cadillac was serviced. (*Id.*).

On June 4, 2015, Plaintiff filed an Amended Complaint, which asserted the same claims as his original Complaint, as well as "additional claims against [Pepe] for: [i] deceptive trade practices and false advertising in violation of [New York] General Business Law § 349, [ii] breach of express extended warranty, [iii] unjust enrichment, [iv] breach of contract, and [v] a request for a declaratory judgment declaring [that Pepe's warranty covered the Cadillac until August 1, 2015, or until the Cadillac had traveled 75,000 miles beyond the

distance covered by the factory warranty]." (Am. Compl. 1-2). The Amended Complaint also claimed that the GM Defendants committed fraud and breached a contract by providing a factory warranty that overlapped with Pepe's warranty. (*Id.* at 7). On September 11, 2015, Defendants filed their motions to dismiss and motion for judgment on the pleadings.

## DISCUSSION

### A.   Applicable Law

#### 1.   Motions to Dismiss Under Rule 12(b)(6) and Motions for Judgment on the Pleadings Under Rule 12(c)

Courts apply the same procedure to evaluate a motion to dismiss under Rule 12(b)(6) and a motion for judgment on the pleadings under Rule 12(c). *Altman* v. *J.C. Christensen & Associates, Inc.*, 786 F.3d 191, 193 (2d Cir. 2015); *Johnson* v. *Rowley*, 569 F.3d 40, 43 (2d Cir. 2009). This procedure requires courts to "draw all reasonable inferences in [the] [p]laintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)). A plaintiff will survive a motion to dismiss if he alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 569 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("[W]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge [a plaintiff's] claims across the line from conceivable to plausible." (internal quotation marks omitted)).

5

The Court is not, however, bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Hennenman*, 517 F.3d 140, 149 (2d Cir. 2008) (citation omitted); *accord Biro* v. *Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)).

"[C]ourts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (internal quotation marks omitted) (citing *Graham* v. *Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)); *accord McPherson* v. *Coombe*, 174 F.3d 276, 280 (2d Cir. 1999). "That said, the liberal pleading standard accorded to pro se litigants is not without limits, and all normal rules of pleading are not absolutely suspended." *Hill* v. *City of New York*, No. 13 Civ. 8901(KPF), 2015 WL 246359, at *2 (S.D.N.Y. Jan. 20, 2015) (internal quotation marks omitted).

### 2. Claim Preclusion

The doctrine of claim preclusion provides that, when a court resolves a case, the parties cannot relitigate "issues that were or could have been raised" in that case. *St. Pierre* v. *Dyer*, 208 F.3d 394, 399 (2d Cir. 2000) (quoting *Federated Dep't Stores, Inc.* v. *Moitie*, 452 U.S. 394, 398 (1981)). Thus, the doctrine of claim preclusion prevents a court from adjudicating a dispute if a

court of competent jurisdiction has already issued "a final judgment on the merits" in a case involving: (i) the same parties or their privies; and (ii) the same cause of action.  *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985).

**B. Analysis**

    **1. Plaintiff Has Failed to State a Claim Against the GM Defendants or the Mercedes Defendants**

        **a. Plaintiff Has Failed to State an ADA Claim Against the GM Defendants or the Mercedes Defendants**

Plaintiff claims that the GM Defendants and the Mercedes Defendants violated his rights under Title III of the ADA because: (i) the companies did not ensure that disabled motorists had an opportunity to test drive their cars; and (ii) the companies did not manufacture "a portion" of their vehicles with hand controls.  (Compl. 6, 8).  Both of these claims lack merit.

            **i. Plaintiff Has Not Alleged Any Facts Suggesting That the GM Defendants or the Mercedes Defendants Owned, Leased, or Operated Places of Public Accommodation**

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182.  Places of public accommodation include "sales or retail establishment[s]" such as car dealerships, but do not include manufacturing plants or other spaces that are closed to the public.  *See id.* § 12181.

Crucially, the Amended Complaint only discusses two establishments that interact with the public, such that they could qualify as places of public accommodation: (i) a Mercedes dealership located on Eleventh Avenue in New York City; and (ii) Pepe Cadillac, located in White Plains, New York. But the Amended Complaint does not allege any facts suggesting that the GM Defendants or the Mercedes Defendants were "own[ers], le[ssors] …, or operat[ors]" of either of either dealerships, rather than suppliers who provided goods for the dealerships to sell. 42 U.S.C. § 12182; *cf.* U.S. DEP'T OF JUSTICE, AMERICANS WITH DISABILITY ACT TECHNICAL ASSISTANCE MANUAL § III-4.4200 (1994 Supp.) (suggesting that "manufacturers" cannot be held liable under the ADA for supplying — or failing to supply — a particular kind of product). As a result, even if the dealerships violated Plaintiff's rights under the ADA, Plaintiff has not shown that the GM Defendants or the Mercedes Defendants could be held liable for these violations.

### ii. The ADA Does Not Require Any Business to Manufacture Hand-Controlled Cars

Even if the GM Defendants and the Mercedes Defendants owned or operated places of public accommodation, they would not have an obligation to manufacture hand-controlled cars. As the Department of Justice has explained, the purpose of Title III of the ADA "is to ensure accessibility to the goods offered by a [place of] public accommodation, *not* to alter the nature or mix of goods that the [place of] public accommodation has typically provided." Commentary on 28 C.F.R. § 36.307, App'x C (1991) (emphasis added); *see also Arizona ex rel. Goddard* v. *Harkins Amusement Enterprises, Inc.*, 603 F.3d 666,

8

671 (9th Cir. 2010) ("Th[e] [ADA] does not require provision of different goods or services, just nondiscriminatory enjoyment of those that are provided."). *Doe* v. *Mut. of Omaha Ins. Co.*, 179 F.3d 557, 560 (7th Cir. 1999) ("The common sense of the statute is that the content of the goods or services offered by a place of public accommodation is not regulated."). Thus, the ADA does not generally require a business to "alter its inventory to include accessible or special goods that are designed for, or facilitate use by, individuals with disabilities." 28 C.F.R. § 36.307(a). For example, "[a] camera store may not refuse to sell cameras to a disabled person, but it is not required to stock cameras specially designed for such persons." *Doe*, 179 F.3d at 560. Similarly, "a bookstore cannot discriminate against disabled people in granting access, but need not assure that the books are available in Braille as well as print." *Goddard*, 603 F.3d at 671. Applying this principle, neither the GM Defendants nor the Mercedes Defendants were required to alter the mix of goods they sell by manufacturing a set portion of their vehicles with hand controls. *See* AMERICANS WITH DISABILITY ACT TECHNICAL ASSISTANCE MANUAL § III-4.4200 (1994 Supp.) ("Manufacturers are not required by [T]itle III to produce accessible equipment.").

        **b.**    **Plaintiff Has Failed to State a Claim Against the GM Defendants for Fraud or Breach of Contract**

Plaintiff also alleges that the GM Defendants committed fraud and breached a contract because the factory warranty for his Cadillac overlapped with the "extended" warranty that Plaintiff purchased from Pepe Cadillac. (Am. Compl. 7). However, Plaintiff has not alleged any facts suggesting that the GM

9

Defendants engaged in fraudulent conduct.  Nor has Plaintiff identified the contractual provisions that the GM Defendants allegedly breached.[5]  As a result, Plaintiff's fraud and breach-of-contract claims against the GM Defendants must be dismissed.  *See Rolon*, 517 F.3d at 149 (explaining that a Court can dismiss claims that are based on "conclusory allegations"); *see also Chavis* v. *Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case, ... threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  (internal quotation marks and citation omitted)).

### c. Plaintiff Has Failed to State a Claim Against the Mercedes Defendants for Unjust Enrichment[6]

Plaintiff claims that the Mercedes Defendants committed "unjust enrichment" because Plaintiff had to pay a $250 fee to rent a hand-controlled car while his Mercedes was being serviced, and it took some time before the Mercedes dealership reimbursed him for the cost of the rental.  (Am. Compl. 2,

---

[5] To the extent Plaintiff is claiming that the GM Defendants breached the extended warranty agreement drafted by Pepe, this claim must fail because the GM Defendants were not signatories to the agreement (*see* Egan Decl., Ex. C), and Plaintiff has not alleged that they authorized Pepe to enter the agreement on their behalf (*see generally* Am. Compl.).  Alternatively, to the extent Plaintiff is claiming that the GM Defendants breached the factory warranty on his Cadillac, the claim must fail because Plaintiff has not alleged any facts suggesting that the GM Defendants violated the terms of that warranty.  (*See id.*).

[6] The Mercedes Defendants suggest that Plaintiff has abandoned his claims for unjust enrichment (*see* Mercedes Reply 7), but Plaintiff's opposition is less clear on that point (*see* Mercedes Resp. 5-6 ("Now since the sweeping laws enacted by Congress[,] the MB USA and GM defendants[] failed in their obligation of contributing to decency of today's norm by including not excluding disabled motorist[s] from test driving or purchasing hand control vehicles when the need [outweighs] the unjust enrichment for a better quality of life treatment of the millions of disabled motorist[s] that consume[] their vehicles.")).

10

7).  As the New York Court of Appeals has explained, "[a]n unjust enrichment claim is rooted in the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another."  *Georgia Malone & Co.* v. *Rieder*, 19 N.Y.3d 511, 516 (2012) (internal quotation marks omitted).  Thus, a plaintiff can only plead an unjust enrichment claim by alleging that the defendant was somehow enriched.  *Id.*  In this case, however, the Amended Complaint does not allege that the Mercedes Defendants were in any way enriched by the delay in reimbursing Plaintiff for the cost of renting a hand-controlled car.  To the contrary, the Amended Complaint acknowledges that the Mercedes Defendants fully compensated Plaintiff for any costs that he incurred.  (*See* Am. Compl. 7).  Consequently, Plaintiff's unjust enrichment claim cannot survive.

> 2. **Plaintiff Has Stated an ADA Claim Against the Pepe Defendants, But Has Not Stated Any State-Law Claims Against Them**
>> a. **Plaintiff Has Stated an ADA Claim Against Pepe Cadillac**

Plaintiff has stated a claim against Pepe Cadillac under two separate provisions of the ADA.  First, 42 U.S.C. § 12182(b)(2)(A)(iii) provides that places of public accommodation must

> make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford … goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

11

42 U.S.C. § 12182. Here, Plaintiff has alleged that he was denied access to two services — a test drive service[7] and a courtesy car rental service — because Pepe refused to move hand controls from Plaintiff's Cadillac to one of Pepe's cars. (Am. Compl. 5, 7). Transferring hand controls from one vehicle to another might be a "reasonable modification[] in policies, practices, or procedures" that would allow disabled individuals to take advantage of the full range of services that Pepe offers. Thus, to avoid liability under the ADA, Pepe must show that the transfer would be "unreasonable," would "fundamentally alter the nature" of the services Pepe provides, or "would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(ii). Pepe has not made — and cannot make — such a showing at this point in the litigation, when there has not been any discovery. Consequently, Plaintiff has alleged a viable ADA claim against Pepe under 42 U.S.C. § 12182(b)(2)(A)(ii).

Plaintiff has also stated an ADA claim against Pepe under 42 U.S.C. § 12182(b)(2)(A)(iv), which provides that places of public accommodation must "remove architectural barriers, and communication barriers that are structural in nature, in existing facilities … where such removal is readily achievable." Regulations promulgated by the Department of Justice interpret the phrase

---

[7] Plaintiff's Amended Complaint suggests, in somewhat vague terms, that Plaintiff attempted to test drive one of Pepe's vehicles, but was unable to do so. (*See* Am. Compl. 7). Because this Court has an obligation to construe *pro se* complaints liberally, it will construe the Amended Complaint to contain an allegation that Pepe was unable to accommodate his request for a test drive. Nevertheless, if discovery reveals that Plaintiff did not expressly ask to test drive one of Pepe's vehicles, the Court will be receptive to an argument that Plaintiff lacks standing to bring an ADA claim based on Pepe's alleged failure to provide test drives to disabled customers.

"architectural barriers" broadly, and expressly provide that "examples of steps to remove barriers include … [i]nstalling vehicle hand controls." 28 C.F.R. § 36.304(b)(21). In light of this regulation, Pepe has an obligation to install hand controls on vehicles that disabled individuals wish to test drive or borrow, unless Pepe demonstrates that installing hand controls is not "readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv).

As Pepe notes, some courts in other circuits have determined that 28 C.F.R. § 36.304(b)(21) does not require a car dealership to attach hand controls to its cars because the absence of hand controls cannot be considered an "architectural barrier" at an "existing facility." *See, e.g.*, *Karczewski* v. *K Motors, Inc.*, No. 14 Civ. 2701 (MMA), 2015 WL 1470651, at *2 (S.D. Cal. Mar. 21, 2015); *Schutza* v. *FRN of San Diego, LLC*, No. 14 Civ. 2628 (JM)(RBB), 2015 WL 574673, at *2-3 (S.D. Cal. Feb. 11, 2015). These courts, however, seem to conflate arguments regarding the meaning and the validity of 28 C.F.R. § 36.304(b)(21). From this Court's perspective, the plain language of 28 C.F.R. § 36.304(b)(21) means that car dealerships must install hand controls for individuals who wish to rent or test drive their vehicles if doing so is "readily achievable." *Cf.* AMERICANS WITH DISABILITY ACT TECHNICAL ASSISTANCE MANUAL § III-4.4200 (1994 Supp.) (explaining that, under 28 C.F.R. § 36.304(b)(21), a "car rental office" must "install vehicle hand controls" on rental vehicles if it is "readily achievable" to do so). That said, dealerships might be able to raise a colorable argument that 28 C.F.R. § 36.304(b)(21) is invalid because it interprets the *statutory* phrase "architectural barriers" in an impermissible

13

manner. *See Chevron, U.S.A., Inc.* v. *Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984).

Here, Pepe has not challenged the validity of 28 C.F.R. § 36.304(b)(21). As a result, this Court must apply that regulation to the facts at hand. According to that regulation, Pepe had an obligation to take readily achievable steps to install hand controls on its vehicles. At this point in the proceedings, Pepe has not demonstrated that it fulfilled that obligation. Consequently, Plaintiff has stated a claim against Pepe under 42 U.S.C. § 12182(b)(2)(A)(iv).[8]

Pepe makes one additional argument to avoid liability, which is its strongest argument by far: The vehicles that Plaintiff wishes to drive are part of Pepe's inventory, and under 28 C.F.R. § 36.307(a), a place of public accommodation is not required to "alter its inventory to include accessible or special goods[.]" Crucially, however 28 C.F.R. § 36.307(a) must be read together with 28 C.F.R. § 36.304(b)(21), which clearly contemplates that businesses may be required to install hand controls on the cars they own, if doing so is "readily achievable." The best way to harmonize these provisions is to say the following: While places of public accommodation are generally not required to alter their inventories by manufacturing or ordering specialty goods, they *are* required to make reasonable, temporary adjustments to goods

---

[8] The Court also considered whether the transfer of hand controls from one vehicle to another could be considered an "auxiliary ... service" that a place of public accommodation would be required to provide under 42 U.S.C. § 12182(b)(2)(A)(iii). However, the Department of Justice has interpreted the phrase "auxiliary ... service" to mean services intended to facilitate "effective communication." 28 C.F.R. Pt. 36, App'x C.

14

already in stock if doing so will help disabled customers access the same goods and services as non-disabled customers.  For example, car dealerships are required to install temporary hand controls on cars already in stock if: (i) installing temporary hand controls is readily achievable; and (ii) making this temporary modification will allow disabled customers to access the full range of goods and services offered by the dealerships.[9]  Under this interpretation of the ADA regulations, Plaintiff has stated an ADA claim against Pepe.

### b. Plaintiff Has Stated an ADA Claim Against Sue Silverman

Plaintiff has also stated an ADA claim against Sue Silverman.  Title III of the ADA provides that it is impermissible for "any person who owns, leases (or leases to), or operates a place of public accommodation" to discriminate against disabled individuals.  42 U.S.C. § 12182(a).  Construed liberally, the Amended Complaint in this case alleges that Sue Silverman "operate[d]" Pepe Cadillac, a place of public accommodation.  The Amended Complaint states that, as the Chief Financial Officer of Pepe, Sue Silverman … "sold Motor vehicles from various manufacturing companies." (Am. Compl. 3).  Later, the Amended Complaint reiterates that Ms. Silverman "is responsible for the sales of [Pepe's] vehicles." (*Id.*).  At this stage in the litigation, these allegations are sufficient to support a claim that Ms. Silverman "operate[d]" Pepe Cadillac, and as a result, she would be legally responsible for Pepe's alleged failure to install temporary

---

[9]   In determining whether installing hand controls is "readily achievable" for Pepe, this Court will consider whether Pepe has employees who are certified to install hand controls and, if not, how much it would cost for an employee to become certified. (*Cf.* Am. Compl. 6 (alleging that Pepe employees are not certified to transfer hand controls from Plaintiff's car to a rental car)).

15

hand controls on its vehicles. During discovery, however, Ms. Silverman is free to produce evidence demonstrating that she did not in fact "operate" Pepe.

### c. Plaintiff's State-Law Claims Against All of the Pepe Defendants Are Barred by the Doctrine of Claim Preclusion

Plaintiff's non-ADA claims against Pepe are barred by an earlier court decision. In 2015, Plaintiff brought suit against "Pepe Cadillac" in the Civil Court of the City of New York, County of Bronx (the "Civil Court"). (Egan Decl., Ex. E). Plaintiff's suit was premised on the claim that, when Pepe sold him an "extended warranty" for his Cadillac, "coverage should have commenced after the original manufacturer's 50,000-mile warranty expired, thereby providing him with 125,000 miles of total warranty coverage." (*Id.*). After a bench trial on June 9, 2015, the Civil Court concluded that the clear, unambiguous language of the warranty provided that it would provide 75,000 miles worth of coverage, beginning "at 0 miles." (*Id.*). As a result, the Civil Court issued a "decision and judgment" in Pepe's favor. (*Id.*).

This Court must give preclusive effect to the Civil Court's Decision. Plaintiff does not — and could not — dispute that the Civil Court was acting within its jurisdiction when it issued a judgment in favor of Pepe, or that the Civil Court addressed the merits of the dispute between the parties. Thus, this Court must consider whether the Civil Court litigation involved: (i) the same parties or their privies; and (ii) the same cause of action. *In re Teltronics Servs., Inc.*, 762 F.2d at 190. The answer to both of these question is yes.

Plaintiff and Pepe Cadillac are both parties to this case, and they were parties to the Civil Court litigation as well. (S*ee generally* Am. Compl.; Egan Decl., Ex. E).[10] In addition, Plaintiff is currently suing Defendant Sue Silverman in her capacity as "Chief Financial Officer of Pepe's Auto Group." (Compl. 3). Considering Ms. Silverman in this capacity, her interests have been fully aligned with Pepe's interests, both in the Civil Court litigation and in this case. Consequently, it is fair to say that Ms. Silverman is in privity with Pepe. *See Chase Manhattan Bank, N.A.* v. *Celotex Corp.*, 56 F.3d 343, 346 (2d Cir. 1995).

Moreover, this case involves the same cause of action as the Civil Court litigation. To determine whether two cases involve the same cause of action, courts consider "whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Monahan* v. *New York City Dep't of Corr.*, 214 F.3d 275, 289 (2d Cir. 2000) (quoting *N.L.R.B.* v. *United Techs. Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983)). In other words, courts look to whether the two actions arise out of the "same nucleus of operative fact." *Channer* v. *Dep't of Homeland Sec.*, 527 F.3d 275, 280 (2d Cir. 2008). Crucially, both Plaintiff's state-law claims in this case and his claims in the Civil Court litigation involve the meaning of the "extended" warranty on Plaintiff's Cadillac; the two sets of claims involve many of the same

---

[10]  The caption of this case refers to Pepe as "Pepe Auto Group," but the body of the Amended Complaint clarifies that "Pepe Auto Group" is also known as "Pepe Cadillac." (Am. Compl. 1, 4).

17

factual issues, and precisely the same issues of contract interpretation.  (*See generally* Am. Compl.; Egan Decl., Ex. E).  This Court will not allow Plaintiff to relitigate his dispute with Pepe simply because he disagrees with the Civil Court's decision.

### 3. Plaintiff Is Not Entitled to Money Damages Under the ADA

The Amended Complaint demands "$1,000,000 (1 million) in damages against both defendants respectively."  (Am. Compl. 8).  The Court does not fully understand how Plaintiff arrived at this one-million-dollar figure, or which of the Defendants allegedly owe Plaintiff that sum.  However, the Court notes, for the sake of clarity, that Plaintiff cannot obtain money damages from the Pepe Defendants for their alleged violations of the ADA.  *See Powell* v. *Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 86 (2d Cir.), *opinion corrected*, 511 F.3d 238 (2d Cir. 2004) ("A private individual may only obtain injunctive relief for violations of a right granted under Title III [of the ADA]; he cannot recover damages.").

## CONCLUSION

For the foregoing reasons, the GM Defendants' motion to dismiss under Rule 12(b)(6) and the Mercedes Defendants' motion for judgment on the pleadings are granted in their entirety.  In addition, the Pepe Defendants' motion for judgment on the pleadings is granted in part: the only remaining claims against them are claims that they violated Plaintiff's rights under the ADA.  The Clerk of Court is directed to terminate docket entries 45, 51, and 55.

The parties remaining in this litigation are further ORDERED to appear for a pretrial conference on **Wednesday, June 22, 2016, at 4:30 p.m.**, in Courtroom 618 of the Thurgood Marshall U.S. Courthouse.  The Court will re-issue a Notice of Initial Pretrial Conference in *Pro Se* Action under separate cover.

SO ORDERED.

Dated:     May 17, 2016
           New York, New York

                                              KATHERINE POLK FAILLA
                                              United States District Judge

*A copy of this Order was mailed by Chambers to:*

Edward C. Funches
215 E. 164th Street
Apt. A
Bronx, NY 10456